O

# United States District Court
# Central District of California

ARAM ADZHIKOSYAN, individually
and on behalf of others similarly situated,
                              Plaintiffs,

     v.

AT&T CORP. et al.,

                              Defendants.

Case № 2:21-CV-05997-ODW (MRWx)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [23] AND DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION [24]**

## I.   INTRODUCTION

Plaintiff Aram Adzhikosyan brings this putative class action against Defendants AT&T Corporation and DIRECTV, LLC alleging Defendants violated California privacy laws.  (*See* Notice of Removal ("NOR") Ex. A ("Compl."), ECF No. 1-1.) Adzhikosyan moves to remand the action to the California Superior Court.  (Mot. Remand, ECF No. 23.)  Defendants move to compel Adzhikosyan to arbitrate his individual claims.  (Mot. Compel, ECF No. 24.)  For the reasons discussed below, the Court **DENIES** both Motions.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

Adzhikosyan's mother subscribes to Defendants' services.   (Compl. ¶ 14.) After Adzhikosyan learned that Defendants may be offering special discounts to their subscribers, he called Defendants on numerous occasions on his mother's behalf, including by placing calls from his cell phone to Defendants' phone numbers (855) 920-0146, (877) 999-1083, or (866) 595-1331 ("Challenged Numbers").  (*Id.*)

During one such call on May 14, 2021, Adzhikosyan confirmed his identity and shared his and his mother's personal information, believing the call to be confidential and not monitored or recorded.  (*Id.* ¶ 15.)  Adzhikosyan first spoke with an agent and then his call was escalated to a manager.  (*Id.* ¶¶ 16–17.)  At that point, the manager informed Adzhikosyan that the entire call was being recorded, as had been all his past phone calls with Defendants.  (*Id.* ¶ 17.)  Adzhikosyan alleges that Defendants record all calls placed to and received from the Challenged Numbers without informing the callers.  (*Id.* ¶ 18.)

Accordingly, on June 8, 2021, Adzhikosyan filed this putative class action against Defendants in California Superior Court alleging violations of California privacy laws.  Adzhikosyan seeks to represent a class of plaintiffs defined as:

> All California citizens [who] made or received one or more telephone calls with Defendants through the phone numbers (855) 920-0146, (877) 999-1083, and/or (866) 595-1331 from May 24, 2017 through the date of trial (the "Class Period") and did not receive notice at the beginning of the telephone call that their telephone conversation may be recorded or monitored (the "Class").

(*Id.* ¶ 24.)  Adzhikosyan defined the subset of the class as:

> All California citizens who made one or more telephone calls with Defendants through the phone numbers (855) 920-0146, (877) 999-1083, and/or (866) 595-1331 while using a "cellular radio telephone" as such term is defined in Cal. Penal Code § 632.7(c)(I), during the Class Period and did not receive notice at the beginning of the telephone call that their telephone conversation may be recorded or monitored (the "Subclass").

(*Id.* ¶ 25.)  Adzhikosyan alleges violations of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 630 *et seq.*, based on Defendants' unlawful recording of California residents' telephone calls.  (*See id.* ¶ 1. (citing Cal. Penal Code §§ 632, 632.7).)  Adzhikosyan alleges each class member is entitled to statutory damages pursuant to California Penal Code section 637.2(a), which permits five thousand dollars per violation or three times actual damages.  (*Id.*, Prayer for Relief.)

Defendants removed this action to federal court based on alleged federal jurisdiction under the Class Action Fairness Act ("CAFA").  Adzhikosyan moves to remand and Defendants move to compel arbitration.  (*See* Mot. Remand, Mot. Compel.)  Both motions are fully briefed.  (Opp'n Mot. Compel ("Opp'n Compel"), ECF No. 29; Opp'n Mot. Remand ("Opp'n Remand"), ECF No. 30; Reply Mot. Compel ("Reply Compel"), ECF No. 31; Reply Mot. Remand ("Reply Remand"), ECF No. 32.)  The Court considers each motion in turn.

### III.   PLAINTIFF'S MOTION TO REMAND

Adzhikosyan moves to remand on two theories.  First, Adzhikosyan argues that he has suffered no injury in fact as required for Article III standing in federal courts because the alleged injury here is not "concrete" and he seeks damages for only a statutory violation.  (Mot. Remand 2.)  Alternatively, Adzhikosyan argues Defendants have failed to establish the required numerosity or amount in controversy for CAFA jurisdiction.  (*Id.*)

### A.   Article III Standing

Plaintiffs asserting claims in federal court must have Article III standing, which requires that a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).   To establish an injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized."  *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  A particularized injury is one

that affects the plaintiff in a "personal and individual way." *Id.*; *see also Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018).  A concrete injury is one that is "real and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotations omitted).  Although an injury "must be 'real' and 'not abstract' or purely 'procedural' . . . it need not be tangible." *Dutta*, 895 F.3d at 1173 (quoting *Spokeo*, 578 U.S. at 340).

"Violations of the right to privacy have long been actionable at common law." *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)).  A right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger*, 876 F.3d at 983 (quoting *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989)).  The Ninth Circuit observed that "the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights" in passing certain state and federal privacy laws, including CIPA.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021).  Because CIPA "codif[ies] a substantive right to privacy," its violation "gives rise to a concrete injury sufficient to confer standing." *Id.* at 598 (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020)).

Adzhikosyan argues that the alleged injury under CIPA is merely statutory rather than an Article III injury in fact.  (Mot. Remand 10.)  Yet, Adzhikosyan alleges that he shared personal information on calls he believed confidential, but which were in fact being recorded without his knowledge or consent.  (Compl. ¶¶ 15–16.)  This directly affects Adzhikosyan's "control of information concerning his . . . person" encompassed in the right to privacy.  *Eichenberger*, 876 F.3d at 983.  Thus, Adzhikosyan has "alleged an invasion of a legally protected interest that is concrete and particularized" sufficient to confer standing.  *See In re Facebook*, 956 F.3d at 598.  Therefore, remand will not be granted on this basis.

**B.    CAFA Jurisdiction**

CAFA gives federal courts jurisdiction over specified class actions if (1) the parties are minimally diverse, (2) the putative class has more than 100 members, and (3) and the aggregated amount in controversy exceeds $5 million.   28 U.S.C § 1332(d)(2).   "[N]o antiremoval presumption attends cases invoking CAFA." *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015).   In fact, "Congress passed CAFA with the 'overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (alteration in original) (quoting S. Rep. No. 109-14, at 35 (2005)).

*1.    Exceptions to CAFA Jurisdiction*

On August 2, 2021, the Court issued an Order to Show Cause ("OSC") questioning the existence of CAFA jurisdiction in this case, and specifically whether either of two exceptions to CAFA jurisdiction applied: "(1) the local controversy exception and (2) the home state exception."  (OSC, ECF No. 16 (quoting *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220, 1223 (9th Cir. 2020)).)  Courts have found the local controversy exception does not apply when injuries are suffered nationwide, even where the proposed class is comprised of only California residents.  *R.A. by & Through Altes v. Amazon.com, Inc.*, 406 F. Supp. 3d 827, 834 (C.D. Cal. 2019).  And under the home state exception, "CAFA requires remand . . . only if all primary defendants are citizens of the alleged home state."  *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (alteration and internal quotation marks omitted).

Adzhikosyan makes no arguments in the motion to remand on the grounds of these exceptions, despite bearing the burden to establish that an exception applies. *See Adams*, 958 F.3d at 1221.  In contrast, Defendants submit declaration testimony that the Challenged Numbers received phone calls from customers throughout the United States, not just California.  (Decl. Kristen Kurelo ISO OSC Resp. ¶¶ 3–5, ECF No. 22-1.)  Accordingly, and in light of Defendants' response demonstrating that the

controversy is not truly local, the Court is persuaded these exceptions to CAFA jurisdiction do not apply. *See Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1119 (9th Cir. 2015) ("[T]he purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others." (quoting S. Rep. No. 109-14, 39 (2005))).

### 2.  Numerosity and Amount in Controversy

To remove a class action filed in state court to federal court, the defendant must file a notice of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "A removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).  Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."  *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962–63 (9th Cir. 2020) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018)).  Similarly, if a plaintiff contests a jurisdictional allegation, the removing defendant is ordinarily required to come forward with evidence to support the allegation.  *Navarro v. Ski Data, Inc.*, No. 2:20-cv-07370-SVW (SKx), 2021 WL 1312579, at *3 (C.D. Cal. Apr. 7, 2021) (citing *Dart Cherokee Basin Operating Sys. Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

Defendants allege, based on their business records, that the class exceeds 100 members, as CAFA requires.  (NOR ¶ 20.)  On removal, Defendants alleged that "at least 1,001 calls were made to and/or received from the Challenged Numbers by putative class members during the Class Period," which at a statutory amount of $5,000 per violation, totals an amount in controversy of at least $5,005,000.  (*Id.* ¶ 24.)  In opposing remand, Defendants submit declaration testimony, based on further

review of business records, that the Challenged Numbers made or received calls from over 1,000 unique telephone numbers with California area codes during the class period.   (Decl. Kristen Kurelo ISO Opp'n Remand ¶ 4, ECF No. 30-1.)   As an example, Defendants submit that the Challenged Numbers made or received 1,920 calls to or from 1,204 unique California telephone numbers in June 2021.  (*Id.* ¶ 5.)   Thus, the calls from June 2021 alone appear to satisfy the jurisdictional requirements.   Extrapolating this monthly figure to the class period beginning on May 24, 2017 results in tens of thousands of such calls.   Thus, Defendants plausibly allege the requisite jurisdictional elements.

Adzhikosyan did not allege an amount in controversy in the Complaint and does not challenge "the rationality, or the factual basis" of Defendants' jurisdictional allegations in the Notice of Removal.  *See Navarro*, 2021 WL 1312579, at *3 (citing *Salter*, 974 F.3d at 964).   Instead, Adzhikosyan speculatively proposes several factors that could potentially reduce the number of class members and amount in controversy Defendants allege.  Adzhikosyan suggests "it is possible that a number of the putative Class Members have signed arbitration agreements with Defendants which prohibits their participation in any class action."  (Mot. Remand 12.)  Adzhikosyan contends that, because of this, Defendants cannot demonstrate numerosity or amount in controversy.

However, "if [federal] jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."  *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam).   In applying this to CAFA, the Ninth Circuit found that "post-filing developments" like denial of class certification does not divest the court of jurisdiction.  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010).   The court reasoned: "(1) § 1332(d)(5)(B)'s jurisdictional limitation applies to 'proposed' classes; (2) jurisdictional facts are assessed *at the time of removal*; and (3) post-removal events . . . do not deprive federal

1   courts of subject matter jurisdiction."  *Id.* at 1091 (discussing *Vega v. T-Mobile USA,*
2   *Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009)) (internal quotations omitted); *see also*
3   *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1278 (9th Cir. 2017) ("CAFA's
4   language demands that class citizenship must be determined as of the date of the
5   pleading giving federal jurisdiction." (internal quotation marks omitted)).

6   Courts have applied these principles to find that the eventuality of a court
7   compelling arbitration for proposed class members does not divest a court of CAFA
8   jurisdiction.  *See Martinez v. Check 'N Go of Cal., Inc.*, No. 15-cv-1864-MLH (RBB),
9   2016 WL 6103166, at *2 (S.D. Cal. Feb. 18, 2016) ("[T]he Court's post-removal order
10  compelling plaintiff's class claims to arbitration and staying those claims does not
11  affect the Court's CAFA jurisdiction analysis."); *see also Dekker v. Vivint Solar, Inc.*,
12  No. 19-cv-07918-WHA, 2021 WL 810226, at *4 (N.D. Cal. Mar. 3, 2021) (rejecting
13  the argument that the existence of arbitration agreements will defeat numerosity).
14  Accordingly, the potential existence of arbitration agreements that could ultimately
15  defeat numerosity or reduce the amount of recovery does not require remand.
16  Moreover, Adzhikosyan's own allegations that Defendants had a "policy" of recording
17  calls is at odds with his later assertion (made in arguing for reduced class numbers)
18  that Defendants have "no basis for Defendants' assumptions that all Class Members'
19  calls were recorded."  (Compl. ¶ 3; Reply Remand 5.)

20  Defendants have demonstrated numerosity and the amount in controversy by a
21  preponderance of the evidence and therefore sufficiently established removal
22  jurisdiction under CAFA.  The motion to remand is accordingly denied.

23  **IV.     DEFENDANTS' MOTION TO COMPEL ARBITRATION**

24  Defendants move to compel arbitration on the grounds that Adzhikosyan's
25  claims are subject to arbitration pursuant to the Customer Agreement and AT&T's
26  Internet Terms of Service, which Adzhikosyan's mother signed.  (Mot. Compel 1–3.)
27  Defendants seek to enforce Adzhikosyan's mother's arbitration agreement against
28  Adzhikosyan as a non-signatory under theories of equitable estoppel and agency.  (*See*

Mot. Compel 14–15.)  Adzhikosyan does not contest that his mother is bound by the arbitration agreements she signed.  Rather, he argues *he* never signed or agreed to any arbitration agreements so no agreement to arbitrate exists between the parties here, and that Defendants' non-signatory theories fail.  (*See* Opp'n Compel 5–15.)

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995).  The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In determining whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Still, in light of the FAA's "savings clause," every arbitration agreement is subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Additionally, "the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate."  *Wheeler v. St. Joseph Hosp.*, 63 Cal. App. 3d 345, 356 (1976); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044–45 (9th Cir. 2009) (collecting cases).  "Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms."  *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)).  However, under California law, which

applies here,[2] "nonsignatories to an agreement with an arbitration clause can be compelled to arbitrate for a variety of reasons," including equitable estoppel and agency principles. *Id.*

Defendants first argue Adzhikosyan should be equitably estopped from claiming he is not bound to the arbitration agreement. (Mot. Compel 16.) Equitable estoppel applies when a plaintiff brings a claim which relies on contract terms for one purpose but the plaintiff disavows the arbitration clause of the agreement. *Namisnak*, 971 F.3d at 1094–95 (citing *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239 (2011)). It is "'inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition' imposed by the contract." *Id.* at 1095 (quoting *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (applying California law)). In other words, where "the claims are fully viable without reference to the terms of th[e] agreements," equitable estoppel does not apply. *Id.* Here, Adzhikosyan does not rely on Defendants' operating agreements or terms of service— or even the substance of the calls—to assert his claims; rather, he relies entirely on CIPA and Defendants' alleged unlawful recording. Accordingly, equitable estoppel does not apply.

Defendants next argue Adzhikosyan is bound to the arbitration agreement under a second exception, which exists where "a preexisting relationship . . . between the nonsignatory and one of the parties to the arbitration agreement" makes it "equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." *Chan v. Charter Commc'ns Holding Co.*, No. 15-cv-0886-JGB (KKx), 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) (citing *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1065, 1069–70 (2008)). Examples of such a preexisting relationship include, among others, agency and parent-child relationships. *Id.* at *5. However, the existence of such a preexisting relationship does not make compelling arbitration automatic. *See In re Ring LLC Priv. Litig.*, No. 19-cv-10899-

---

[2] The parties agree that California law applies. (*See* Mot. Compel 11 n. 3; Opp'n Compel 8.)

MWF (RAOx), 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021) (refusing to bind non-signatory children to their parents' adhesion contracts for consumer goods that contained arbitration provisions).

Defendants argue that this preexisting relationship exception applies to Adzhikosyan because he is an "authorized user" on his mother's account and courts "routinely compel arbitration of authorized users in these circumstances." (Mot. Compel 14.) However, Defendants provide no authority for this proposition, and the cases that Defendants do cite are inapposite, as the "authorized users" in those cases had all signed agreements to arbitrate at some point themselves. *See Blau v. AT & T Mobility*, No. 11-cv-00541-CRB, 2012 WL 566565, at *1 (N.D. Cal. Feb. 21, 2012) (involving "authorized users" who had at some point themselves agreed to terms of service); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (same). Another case Defendants cite bases its decision on the theory of equitable estoppel, already rejected here for reasons explained above. *Baron v. Sprint Corp.*, No. 19-cv-1255-JKB, 2019 WL 5456796, at *3 (D. Md. Oct. 24, 2019) (basing decision on Fourth Circuit theory of equitable estoppel). Here, in contrast, Adzhikosyan's mother added him as an "authorized user" merely so that he could make inquiries on her behalf. (Decl. Aram Adzhikosyan ¶¶ 6–7, ECF No. 29-1.) Nothing before the Court suggests that Adzhikosyan, himself, ever agreed to any contractual terms, including arbitration, like the "authorized users" in Defendants' cases.[3]

Finally, Defendants misstate agency principles in suggesting that Adzhikosyan, in acting as an agent for his mother, was therefore bound by her contracts. (*See* Mot. Compel 15.) Under agency theory, "[t]he legal consequences of an agent's actions may be attributed to a principal," not vice versa. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448 (9th Cir. 2018). Similarly, while a non-signatory may invoke an arbitration agreement as an agent of a signatory party against *another signatory* party

---

[3] That Plaintiff had to "authenticate [the] account" and was "treated as [an] authorized user[]" does not make him like the 'authorized users' in the cited cases who were subject to the arbitration agreements. (*See* Mot. Compel 8; Decl. Andrew Green ISO Mot. Compel ¶¶ 32–34, ECF No. 24-2.)

to the agreement, it does not follow that the reverse is true (i.e., that a non-signatory can be compelled to arbitrate absent an applicable exception). *See Simmons v. Hankey*, No. 2:16-cv-06125-ODW (JEMx), 2017 WL 424850, at *4 (C.D. Cal. Jan. 30, 2017). Thus, Defendants' agency argument also fails.

Defendants do not cite, nor is the Court aware of, any authority holding that a preexisting relationship, standing alone, makes it equitable to bind a non-signatory to an arbitration agreement. Absent allegations or evidence that Adzhikosyan used his mother's account or reaped its benefits, the Court sees no equitable reason to hold Adzhikosyan to arbitration provisions to which he never agreed. *See In Re Ring LLC Priv. Litig.*, No. 19-cv-10899-MWF (RAOx), 2021 WL 4557222, at *3 (C.D. Cal. Sept. 3, 2021) (rejecting motion to compel arbitration for non-signatory parties on agency theory and distinguishing from a situation where party had "affirmatively and voluntarily used the purchased product"). Adzhikosyan did not consent to arbitrate and the Court will not compel him to do so.

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 23) and **DENIES** Defendants' Motion to Compel Arbitration (ECF No. 24).

**IT IS SO ORDERED.**

December 17, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

12