Michael W. McTigue Jr. (*pro hac vice*)
mmctigue@cozen.com
Meredith C. Slawe (*pro hac vice*)
mslawe@cozen.com
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215.665.2000
Facsimile: 215.665.2013

Frank Gooch III (SBN 70996)
fgooch@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394.4700

*Attorneys for Defendants AT&T Corp.*
*and DIRECTV, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ARAM ADZHIKOSYAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AT&T CORP., a New York corporation, DIRECTV, LLC, a California limited liability company, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-05997-ODW-MRW<br><br>Honorable Otis D. Wright II<br><br>**DEFENDANTS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR A STAY PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Filed concurrently with [Proposed] Order]**<br><br>Date:       February 14, 2022<br>Time:       1:30 p.m.<br>Courtroom:  5D, 5th Floor |

**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, in the event this unopposed motion requires a hearing, on Monday, February 14, 2022, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Otis D. Wright II in Courtroom 5D on the 5th Floor of the United States Courthouse located at 350 West 1st Street, Los Angeles, California 90012, Defendants AT&T Corp. and DIRECTV, LLC ("Defendants") will and hereby do move this Court for an Order staying this action pending appeal of this Court's December 17, 2021 Order denying Defendants' Motion to Compel Arbitration (Dkt. No. 36). Plaintiff does not oppose this Motion and consents to the requested relief.

Defendants' appeal seeks to vindicate their rights to have the parties' dispute resolved in an individual arbitration instead of as part of a putative class action in this Court. Accordingly, Defendants respectfully request a stay of proceedings while their appeal is pending so that their opportunity to seek review is not effectively overtaken by litigation. This Motion is authorized by the Federal Arbitration Act, 9.U.S.C. §§ 1–16, Federal Rule of Civil Procedure 6(b), and this Court's inherent authority over its docket.

This unopposed Motion is supported by the accompanying Memorandum of Points and Authorities and any other written or oral evidence or argument that may be presented at or before the time this Motion is heard by this Court. This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on December 28 and 30, 2021.

Dated: January 14, 2022

By: */s/ Michael W. McTigue Jr.*

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Frank Gooch III (SBN 70996)

*Attorneys for Defendants AT&T Corp. and DIRECTV, LLC*

- 1 -

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 5

I.     This Court Should Grant a Stay Pending Appeal ........................................... 5

     A.     Defendants' Appeal Raises "Serious Legal Questions"
               Warranting a Stay .............................................................................. 7

          i.     Other Courts Have Found an Authorized User Must
                    Arbitrate Claims Arising from Their Management of a
                    Consumer Services Account. ................................................. 8

          ii.     Other Courts Have Found that a Preexisting Relationship
                    Can Bind Non-Signatories to Arbitration Agreements. ........... 13

          iii.     California Courts Have Long Held that an Agent Is
                    Bound to Arbitrate Claims Arising Out of Actions
                    Taken in Their Agency Capacity. ............................................ 14

     B.     Defendants Will Suffer Irreparable Harm If a Stay
               Is Not Granted. ................................................................................. 15

     C.     Plaintiff Has Consented to a Stay. ...................................................... 17

     D.     A Stay Would Be in the Public Interest. ............................................. 18

CONCLUSION ......................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*,
    727 F.2d 1419 (9th Cir. 1984) .......................................................... 16

*Ali v. JP Morgan Chase Bank*,
    No. 13-1184, 2014 WL 12691084 (N.D. Cal. Mar. 10, 2014) ................... *passim*

*Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*,
    No. 20-5193 (C.D. Cal. Dec. 1, 2020) ................................................ 17

*In re Apple iPhone 3G Prods. Liab. Litig.*,
    No. 09-2045, 2010 WL 9517400 (N.D. Cal. Dec. 9, 2010) ...................... 18

*Aviles v. Quik Pick Express, LLC*,
    No. 15-5214, 2016 WL 6902458 (C.D. Cal. Jan. 25, 2016) ...................... *passim*

*Benson v. Double Down Interactive, LLC*,
    No. 18-0525, 2019 WL 972482 (W.D. Wash. Feb. 28, 2019) ................... 6

*Berman v. Dean Witter & Co.*,
    44 Cal. App. 3d 999 (1975) ........................................................ 2, 14

*Bridge Fund Cap. Corp. v. FastBuck Franchise Corp.*,
    No. 08-0767, 2009 WL 1325823 (E.D. Cal. May 12, 2009) ..................... 17

*Bridge v. Credit One Fin.*,
    No. 14-1512, 2016 WL 1298712 (D. Nev. Mar. 31, 2016) .................. 2, 11, 12

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) .................................................. 1, 5, 6, 8

*Callahan v. PeopleConnect, Inc.*,
    No. 20-9203 (N.D. Cal. Dec. 20, 2021) .............................................. 17

*Chan v. Charter Commc'ns Holding Co.*,
    No. 15-0886, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) .................. 3, 13

*Cherny v. AT&T, Inc.*,
    No. 09–3625, 2010 WL 2572929 (C.D. Cal. Feb. 8, 2010) .................. 7, 16

- ii -

*Delisle v. Speedy Cash*,
  No. 18-2042, 2019 WL 7755931 (S.D. Cal. Oct. 3, 2019) ......................6, 16, 18

*Doe 1 v. Swift Transp. Co.*,
  No. 10-0899, 2017 WL 758279 (D. Ariz. Feb. 24, 2017)....................................6

*Durruthy v. Charter Commc'ns, LLC*,
  No. 20-1374, 2021 WL 254194 (S.D. Cal. Jan. 25, 2021)...................................6

*Eberle v. Smith*,
  No. 07-0120, 2008 WL 238450 (S.D. Cal. Jan. 29, 2008).....................7, 16, 17

*Echevarria v. Aerotek, Inc.*,
  No. 16-4041, 2019 WL 3207812 (N.D. Cal. July 16, 2019).........................6, 16

*Ehleiter v. Grapetree Shores, Inc.*,
  482 F.3d 207 (3d Cir. 2007) ...............................................................................5

*Ellington v. Eclipse Recreational Vehicles, Inc.*,
  No. 20-0800 (C.D. Cal. Jan. 25, 2021)...............................................................17

*Gray v. Golden Gate Nat'l Recreational Area*,
  No. 08-0722, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ..............................19

*Harris v. Super. Ct.*,
  188 Cal. App. 3d 475 (1986) .............................................................................14

*Jones v. Deutsche Bank AG*,
  No. 04-5357, 2007 WL 1456041 (N.D. Cal. May 17, 2007) ...............................7

*JSM Tuscany, LLC v. Super. Ct.*,
  193 Cal. App. 4th 1222 (2011) ...............................................................8, 9, 10

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ............................................................................7

*Laster v. T-Mobile USA, Inc.*,
  No. 05-1167, 2008 WL 5377635 (S.D. Cal. Nov. 4, 2008) .................................6

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ....................................................................*passim*

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) .....................................................................9, 12

*Murphy v. DIRECTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ........................................................................ 18

*Murphy v. DIRECTV, Inc.*,
    No. 07-6465, 2008 WL 8608808 (C.D. Cal. July 1, 2008) ........................ *passim*

*Namisnak v. Uber Techs., Inc.*,
    971 F.3d 1088 (9th Cir. 2020) ............................................................ 2, 8, 9, 14

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019),
    *aff'd*, 815 F. App'x 612 (2d Cir. 2020) ........................................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................................... 7

*Pokorny v. Quixtar Inc.*,
    No. 07-0201, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ....................... 7, 16

*Revitch v. DIRECTV, LLC*,
    No. 18-1127, 2018 WL 5906077 (N.D. Cal. Nov. 9, 2018) .......................... 6, 16

*Ricketts v. Nat'l Amusement, Inc.*,
    No. 21-0365 (C.D. Cal. Aug. 16, 2021) ........................................................... 17

*Riley's Am. Heritage Farms v. MacHott*,
    No. 20-1739 (C.D. Cal. Feb. 9, 2021) .............................................................. 17

*In re Ring LLC Priv. Litig.*,
    No. 19-10899, 2021 WL 2621197 (C.D. Cal. June 24, 2021) .................... 13, 14

*Rittmann v. Amazon.com, Inc.*,
    No. 16-1554, 2019 WL 2475791 (W.D. Wash. June 13, 2019) ......................... 6

*Roe v. SFBSC Mgmt., LLC*,
    No. 14-3616, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ................... 7, 16, 18

*Simmons v. Hankey*,
    No. 16-6125, 2017 WL 424850 (C.D. Cal. Jan. 30, 2017) ............................... 15

*Stafford v. Rite Aid Corp.*,
    No. 17-1340, 2020 WL 4366014 (S.D. Cal. July 30, 2020) ............................... 6

*Steiner v. Apple Comput., Inc.*,
    No. 07-4486, 2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ............................ 15

- iv -

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN                CASE NO.: 2:21-CV-05997-ODW-MRW
SUPPORT OF THEIR UNOPPOSED MOTION FOR A STAY PENDING APPEAL

*Stern v. Cingular Wireless Corp.*,
No. 05-8842, 2006 WL 2790243 (C.D. Cal. Sept. 11, 2006)...............................6

*Tamsco Props., LLC v. Langemeier*,
597 F. App'x 428 (9th Cir. 2015).......................................................14

*Tice v. Amazon.com, Inc.*,
No. 19-1311, 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020),
*rev'd on other grounds*, 845 F. App'x 535 (9th Cir. 2021)............................3, 13

*Tillage v. Comcast Corp.*,
No. 17-6477 (N.D. Cal. Mar. 13, 2018) ...............................................6

*UFCW & Emps. Benefit Tr. v. Sutter Health*,
241 Cal. App. 4th 909 (2015) ............................................................8

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
No. 16-1953, 2018 WL 6074573 (C.D. Cal. Mar. 8, 2018) ...............................6

*Ward v. Est. of Goossen*,
No. 14-3510, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ........................6, 18

*Wiedenbeck v. United Educ. Inst.*,
No. 15-0810 (C.D. Cal. Jan. 14, 2016) ...............................................17

*Wilson v. Huuuge, Inc.*,
No. 18-5276, 2019 WL 998319 (W.D. Wash. Mar. 1, 2019) ............................6

*Winig v. Cingular Wireless LLC*,
No. 06-4297, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006)...................7, 16, 17

*In re Wirecomm Wireless, Inc.*,
No. 07-2451, 2008 WL 3056491 (E.D. Cal. Aug. 1, 2008) ........................1, 6, 7

*Woods v. JK Harris Fin. Recovery Sys., LLC*,
No. 04-1836, 2005 WL 8172267 (W.D. Wash. Apr. 22, 2005)..........................5

*Wuest v. Comcast Cable Commcn's Mgmt., LLC*,
No. 17-4063, 2017 WL 5569819 (N.D. Cal. Nov. 20, 2017)..................6, 16, 17

*Zaborowski v. MHN Gov't Servs., Inc.*,
No. 12–5109, 2013 WL 1832638 (N.D. Cal. May 1, 2013)..............7, 16, 17, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendants AT&T Corp. ("AT&T") and DIRECTV, LLC ("DIRECTV") (together, "Defendants") respectfully request that further proceedings in this Court be stayed pending resolution of Defendants' appeal of the denial of their Motion to Compel Arbitration. Plaintiff consents to a stay of these proceedings pending this appeal.

This Court determined that estoppel and agency principles did not require Plaintiff, an adult and non-signatory to his mother's arbitration agreements, to arbitrate this dispute. *See* Order Den. Pl.'s Mot. Remand & Den. Defs.' Mot. Compel Arb. ("Order") 8–12, Dkt. No. 36. As set forth below, this Court's ruling did not address the specific terms in Plaintiff's mother's agreements that require arbitration of this dispute. In addition, it is contrary to other decisions applying estoppel and agency principles under similar facts. Defendants' appeal raises serious legal questions concerning when non-signatories to arbitration agreements are bound to arbitrate disputes under those agreements. This is a textbook case in which a stay pending appeal is warranted to ensure that Defendants would not be deprived of the benefits of arbitration.

Unlike in most circuits, where district court stays are automatic following appeals under the Federal Arbitration Act ("FAA"), the Ninth Circuit has held that such stays are discretionary. The Ninth Circuit rule is designed "to prevent defendants from bringing frivolous motions to compel arbitration" and then filing an appeal that will improperly delay the proceedings. *In re Wirecomm Wireless, Inc.*, No. 07-2451, 2008 WL 3056491, at *2 (E.D. Cal. Aug. 1, 2008) (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)). District courts in this Circuit therefore routinely stay proceedings in this specific context, unless they determine that the appeal is frivolous and has no "reasonable probability or fair prospect of success." *Aviles v. Quik Pick Express, LLC*, No. 15-5214, 2016 WL 6902458, at *2 (C.D. Cal. Jan. 25, 2016) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011)).

There is no disagreement that the FAA and California law provide that "'nonsignatories to an agreement with an arbitration clause can be compelled to arbitrate for a variety of reasons,' including equitable estoppel and agency principles." Order at 10 (quoting *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020) (applying California law)). Interpreting these principles narrowly, this Court concluded that a non-signatory could be equitably estopped from arbitrating claims under an agreement only if the non-signatory used the underlying services or asserted claims under the contract. *See* Order at 10, 12. This Court also held that while a non-signatory agent could compel arbitration of a dispute against a signatory, the non-signatory agent could not be compelled to arbitrate that same dispute. *See* Order at 11–12. This Court did not cite or rely on the controlling agreements or any binding authority in support of these holdings.

In this case, it is undisputed that: (a) Plaintiff's mother's agreements specifically require authorized users to arbitrate their disputes with Defendants; (b) Plaintiff affirmatively sought the privilege of being designated an authorized user under his those agreements; (c) Plaintiff used that contractual privilege to manage his mother's rights, duties, and obligations under those agreements; and (d) Plaintiff asserted claims arising directly from actions he took under those agreements in managing his mother's accounts as her agent. *See* Compl. ¶¶ 1, 14–16; Declaration of Plaintiff ("Pl.'s Decl.") ¶¶ 6–8, Dkt. No. 29-1. Under similar circumstances, courts in California and elsewhere have compelled non-signatories to arbitrate their disputes under the terms of the underlying agreements and under equitable estoppel or agency principles. *See, e.g.*, *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (1975) (holding non-signatory plaintiff was bound by his wife's arbitration agreement where the plaintiff's claims arose while acting as her agent); *Bridge v. Credit One Fin.*, No. 14-1512, 2016 WL 1298712, at *3 (D. Nev. Mar. 31, 2016) (holding non-signatory plaintiff was bound by arbitration provision in cardholder agreement where the plaintiff's claims arose from non-

signatory's management of his mother's account); *Chan v. Charter Commc'ns Holding Co.*, No. 15-0886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) (holding that non-signatory plaintiff must arbitrate tort claims pursuant to arbitration provision in her husband's services agreement because of their "preexisting relationship"); *Tice v. Amazon.com, Inc.*, No. 19-1311, 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020) (holding that the non-signatory plaintiff was bound to arbitrate under his wife's contractual agreement), *rev'd on other grounds*, 845 F. App'x 535 (9th Cir. 2021).

Because other courts have compelled arbitration in cases with similar facts, there is at least a "fair prospect" that the Ninth Circuit will agree with Defendants on appeal. If this action is not stayed and Defendants prevail on appeal, they will have been deprived of their arbitration rights and irreparably harmed with burdensome and unnecessary motion practice and discovery. In addition, Plaintiff consents to a stay of proceedings pending the resolution of Defendants' appeal. Respectfully, a stay is warranted.

## BACKGROUND

On June 8, 2021, Plaintiff filed this putative class action in Los Angeles County Superior Court alleging that "Defendants unlawfully recorded telephone calls" he placed on behalf of his mother—Zarui Adzhikosyan—related to her AT&T and DIRECTV accounts. Compl. ¶¶ 1, 14–15. Plaintiff asserts two claims individually and on behalf of a putative class of California citizens under the California Invasion of Privacy Act ("CIPA"). Defendants timely removed the action to this Court on July 23, 2021. Notice of Removal, Dkt. No. 1.

On September 3, 2021, Defendants moved to compel Plaintiff to arbitrate his claims against Defendants pursuant to the binding arbitration provisions in the agreements governing his mother's accounts with Defendants.[1] Defs.' Notice of Mot.

---

[1]     These arbitration provisions are contained in the DIRECTV Residential Customer Agreement ("Customer Agreement") § 8, AT&T's Internet Terms of Service ("Internet TOS") § 13, AT&T U-Verse TV and AT&T Phone General Terms of Service ("General TOS") § 11, and Consumer Service Agreement ("CSA") § 1.3. *See* Declaration of Andrew Green ("Green Decl."), Dkt. No. 24-2.

- 3 -

to Compel Arb. & Stay Litig., Dkt. No. 24. Defendants argued that Plaintiff should be bound to arbitrate this dispute because he is an "authorized user" under his mother's agreements. Specifically, the agreements provide:

> (d) Authorized User(s).
>
> You may authorize spouses, partners, family or other household members or designated persons to act on your behalf in managing your account, including changing or adding equipment and programming, in two ways: (i) by providing such person access to your confidential account password, or (ii) updating your account information to add authorized user(s).

Customer Agreement § 3(d); *see also, e.g.*, CSA § 1.2. The applicable arbitration provisions provide:

> References to "DIRECTV," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us.

Customer Agreement § 8.2(1); *see also, e.g.*, CSA § 1.2 ("Authorized Users . . . are subject to the limitations and obligations of this Agreement, including its arbitration provisions."); *id.* §§ 1.3.2.1, 6 ("In these AT&T Internet Service Terms, . . . 'you' refers to the Account holder, Sub-Account holder, and any Authorized User(s) . . . .").

Thus, Defendants argued that Plaintiff must arbitrate his claims because, *inter alia*: (a) Plaintiff specifically requested to be and was then designated as an "authorized user" under the terms of the agreements; (b) Plaintiff invoked his status as an "authorized user" and invoked the terms of the agreements when he called Defendants as his mother's agent "on her behalf" to manage her accounts; and (c) Plaintiff's claims arise from and/or are inextricably intertwined with his mother's obligations under the agreements. Defs.' Mem. P. & A. Supp. Mot. Compel Arb. & Stay Proceedings 1–2, Dkt. No. 24-1.

In opposition, Plaintiff did "not contest that his mother is bound by the arbitration agreements she signed," but rather "argue[d] *he* never . . . agreed to any arbitration

- 4 -

agreements." Order at 9; *see also* Pl.'s Opp'n to Defs.' Mot. Compel Arb. & Stay Proceedings 1, Dkt. No. 29 ("Plaintiff does not dispute that his mother . . . signed an agreement with Defendants, which includes an arbitration clause," or that these agreements and arbitration clauses are binding and enforceable). Plaintiff testified that:

- DIRECTV informed him that, "to make the inquiries on [his] mother's behalf, [he] would need to be added as an authorized user," Pl.'s Decl. ¶ 6, Dkt. No. 29-1;

- he "asked [his] mother" to have him added under the agreements as an "authorized user," *id.*;

- after he was added as an "authorized user," he "began calling Directv about [his] mother's account to confirm the amount owed for her cable bill, and to make sure there were no unexpected charges," *id.* ¶ 7; and

- he "call[ed] Defendants on [his] mother's behalf" between "once per month, . . . [and] about twice per month" to inquire as to "special discounts," *id.* ¶ 8.

This Court denied Defendants' Motion to Compel Arbitration on December 17, 2021. Dkt. No. 36. Defendants timely appealed this Court's Order to the Ninth Circuit, and now respectfully seek a stay of this action pending appeal with Plaintiff's consent.

## ARGUMENT

### I.   This Court Should Grant a Stay Pending Appeal.

A stay pending appeal of an order denying a motion to compel arbitration is automatic in most circuits. *See, e.g.*, *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) (discussing circuit split). In declining to adopt this rule, the Ninth Circuit observed that an automatic stay "would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration" and appealing its denial. *Britton*, 916 F.2d at 1412. By empowering the district courts to deny stays pending appeal, "the Ninth Circuit sought to prevent defendants from bringing frivolous motions to compel

arbitration" in the first place. *In re Wirecomm Wireless*, 2008 WL 3056491, at *2 (citing *Britton*, 916 F.2d at 1412).

Following the reasoning in *Britton*, courts generally stay proceedings pending the appeal of a denial of a motion to compel arbitration unless the appeal is patently frivolous. *See Stafford v. Rite Aid Corp.*, No. 17-1340, 2020 WL 4366014, at *4 (S.D. Cal. July 30, 2020) (granting stay where the appeal "present[s] serious legal questions, not frivolous in nature," even though it did not raise matters of first impression); *Benson v. Double Down Interactive, LLC*, No. 18-0525, 2019 WL 972482, at *3 (W.D. Wash. Feb. 28, 2019) (granting stay where "there is no clear precedent . . . squarely addressing the issue" raised); *Doe 1 v. Swift Transp. Co.*, No. 10-0899, 2017 WL 758279, at *2 (D. Ariz. Feb. 24, 2017) (granting stay "given the lack of precedent on the issue"); *Laster v. T-Mobile USA, Inc.*, No. 05-1167, 2008 WL 5377635, at *2 (S.D. Cal. Nov. 4, 2008) (granting stay as appeal raised "an important issue of widespread consumer concern" (citation omitted)); *Murphy v. DIRECTV, Inc.*, No. 07-6465, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008) (granting stay given the "paucity of authority on the issue"); *Stern v. Cingular Wireless Corp.*, No. 05-8842, 2006 WL 2790243, at *1 (C.D. Cal. Sept. 11, 2006) (granting stay where "defendants cite to cases in other jurisdictions that have concurred in their argument"); *Woods v. JK Harris Fin. Recovery Sys., LLC*, No. 04-1836, 2005 WL 8172267, at *1 (W.D. Wash. Apr. 22, 2005) (granting stay as "the Court concludes that the Defendant's appeal is not frivolous").[2]

---

[2]      *See also*, *e.g.*, *Durruthy v. Charter Commc'ns, LLC*, No. 20-1374, 2021 WL 254194, at *2 (S.D. Cal. Jan. 25, 2021); *Delisle v. Speedy Cash*, No. 18-2042, 2019 WL 7755931 (S.D. Cal. Oct. 3, 2019); *Echevarria v. Aerotek, Inc.*, No. 16-4041, 2019 WL 3207812 (N.D. Cal. July 16, 2019); *Rittmann v. Amazon.com, Inc.*, No. 16-1554, 2019 WL 2475791 (W.D. Wash. June 13, 2019); *Wilson v. Huuuge, Inc.*, No. 18-5276, 2019 WL 998319 (W.D. Wash. Mar. 1, 2019); *Revitch v. DIRECTV, LLC*, No. 18-1127, 2018 WL 5906077 (N.D. Cal. Nov. 9, 2018); Order Granting Mot. Stay Pending Appeal, *Tillage v. Comcast Corp.*, No. 17-6477, Dkt. No. 51 (N.D. Cal. Mar. 13, 2018); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-1953, 2018 WL 6074573 (C.D. Cal. Mar. 8, 2018); *Wuest v. Comcast Cable Commc'n's Mgmt., LLC*, No. 17-4063, 2017 WL 5569819 (N.D. Cal. Nov. 20, 2017); *Aviles*, 2016 WL 6902458; *Ward v. Est. of Goossen*, No. 14-3510, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014); *Ali v. JP Morgan Chase Bank*, No. 13-1184, 2014 WL 12691084 (N.D. Cal. Mar. 10, 2014);

- 6 -

Courts in this Circuit weigh four factors when considering whether to stay proceedings pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Courts take a "flexible approach" to these factors and use a "sliding scale" such that "a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964–66 (citation omitted). For example, the "likelihood of success" requirement is "relaxed" if the other three factors weigh in favor of a stay. *In re Wirecomm Wireless*, 2008 WL 3056491, at *2. These factors are particularly "relaxed" where arbitration rights are involved, as "the right to arbitrate would be devalued, if not rendered meaningless, if litigation proceeded apace." *Roe v. SFBSC Mgmt., LLC*, No. 14-3616, 2015 WL 1798926, at *2 (N.D. Cal. Apr. 17, 2015) (quoting *Cherny*, 2010 WL 2572929, at *1 (collecting cases)).

Here, all four factors weigh strongly in favor of a stay.

## A. Defendants' Appeal Raises "Serious Legal Questions" Warranting a Stay.

To conclude that a stay would be appropriate, a court need not find its order was erroneous or that movant "is more likely than not" to win on appeal. *Leiva-Perez*, 640 F.3d at 966. Such a standard would be improper, as it would require a district court to

---

*Zaborowski v. MHN Gov't Servs., Inc.*, No. 12-5109, 2013 WL 1832638 (N.D. Cal. May 1, 2013); *Cherny v. AT&T, Inc.*, No. 09-3625, 2010 WL 2572929 (C.D. Cal. Feb. 8, 2010); *Pokorny v. Quixtar Inc.*, No. 07-0201, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008); *Eberle v. Smith*, No. 07-0120, 2008 WL 238450 (S.D. Cal. Jan. 29, 2008); *Jones v. Deutsche Bank AG*, No. 04-5357, 2007 WL 1456041 (N.D. Cal. May 17, 2007); *Winig v. Cingular Wireless LLC*, No. 06-4297, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006).

- 7 -

"say[] that it erred in not granting defendant's original motion." *Murphy*, 2008 WL 8608808, at *2 (citation omitted). Instead, the movant need only show "the motion presents a substantial question." *Britton*, 916 F.2d at 1412; *see also Aviles*, 2016 WL 6902458, at *2 (The moving party need only show "that its appeal 'raises serious legal questions, or has a reasonable probability or fair prospect of success.'" (quoting *Leiva-Perez*, 640 F.3d at 971)).

Defendants' appeal raises substantial questions as to whether Plaintiff must arbitrate claims that stem from actions he took managing his mother's accounts as the account holder's designated agent and as an "authorized user" under the agreements. This Court determined that neither equitable estoppel nor agency principles bound Plaintiff to arbitration. But this Court did not address the specific contractual provisions governing authorized users that bind Plaintiff to arbitration. Applying similar facts to the law, other courts—including California appellate courts—have reached different conclusions. Given these differences of opinion and the importance of these issues, Defendants' appeal raises serious legal questions warranting a stay.[3]

### i. Other Courts Have Found an Authorized User Must Arbitrate Claims Arising from Their Management of a Consumer Services Account.

Under California law, non-signatories to an agreement containing an arbitration provision are equitably estopped from escaping arbitration when their "claims [] are dependent upon or inextricably intertwined with the **obligations** imposed by the contract containing the arbitration clause." *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222, 1241 (2011) (emphasis added); *accord Namisnak*, 971 F.3d at 1095. "[T]he linchpin for equitable estoppel is . . . fairness." *UFCW & Emps. Benefit Tr. v. Sutter Health*, 241 Cal. App. 4th 909, 929 (2015) (citation omitted). Thus, when non-

---

[3]   Under this Court's reasoning, an account holder could designate another individual to act on their behalf in managing their obligations in order to side step a binding arbitration agreement and class action waiver or other contractual provisions in the account holder's agreement.

signatories "knowingly exploit[] the agreement containing the arbitration clause despite having never signed the agreement," they may be compelled to arbitration on equitable estoppel grounds. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (citation omitted); *see also Namisnak*, 971 F.3d at 1095. In such cases, it would be inequitable to allow a non-signatory to "rely[] on an agreement for one purpose while disavowing the arbitration clause of the agreement" when a dispute arises. *Namisnak*, 971 F.3d at 1095 (citation omitted).

Plaintiff exploited and relied on his mother's agreements with Defendants when he: (a) affirmatively requested to be made an "authorized user" under the terms of the agreements; and (b) used his status as her agent and as an "authorized user" to place the alleged calls at issue—all of which concerned managing his mother's payments, billing, and available discounts and to lodge complaints and seek credits under her agreements. *See* Compl. ¶¶ 14–15; Pl.'s Decl. ¶¶ 6–8, Dkt. No. 29-1. In its Order, this Court seemed to limit the reach of the equitable estoppel doctrine to individuals who assert contractual claims under the underlying agreements or who actually used or benefited from the underlying services. *See* Order at 10 (Plaintiff "does not rely on Defendants' operating agreements or terms of service."); *id.* at 12 ("Absent allegations or evidence that [Plaintiff] used his mother's account or reaped its benefits, the Court sees no equitable reason to hold [him] to arbitration provisions to which he never agreed."). Respectfully, other courts in this Circuit and elsewhere have reached opposite conclusions on similar facts.

First, application of equitable estoppel principles in connection with arbitration provisions has not been limited to situations where the non-signatory asserts a contractual claim under the underlying agreement. As the California Superior Court held, "there is no rational basis to limit [application of the doctrine] to claims expressly based on the breach of the [agreements]." *JSM Tuscany, LLC*, 193 Cal. App. 4th at 1241. Instead, if the claims are "inextricably intertwined with the **obligations** imposed

by the contract containing the arbitration clause," arbitration must be compelled. *Id.* (emphasis added).

Here, the agreements cover authorized users, like Plaintiff, and govern "payment," "billing statements," "bill credits or refunds," "bill inquiries and refunds," "promotions and contingent benefits," and "calling our customer service department." Customer Agreement §§ 2, 2(f), 2(h), 3(d), 8.1; General TOS §§ 5, 11; Internet TOS §§ 6, 6(b), 6(g), 13; CSA §§ 1.2, 1.9–1.10. Indeed, the agreements contemplate the very calls allegedly made by Plaintiff to Defendants. Under the heading "<u>Questions About Your Statement</u>," the Customer Agreement provides:

> If you think your statement is incorrect or if you need more information about it, contact us immediately. We will try to resolve any complaints you have as promptly as we can.

Customer Agreement § 2(g); *see also, e.g.,* CSA § 1.10. "You" includes "authorized users" like Plaintiff.[4]

Plaintiff necessarily invoked all of the payment and customer service provisions under his mother's agreements when he affirmatively asked to be designated as an authorized user for the purpose of managing her accounts and then called Defendants for the sole purpose of managing those accounts. All of the alleged calls that serve as the basis of Plaintiff's claims stem from his interactions with Defendants specifically related to his mother's contractual **obligations**.

Second and respectfully, this Court did not cite the contractual provisions that bind Plaintiff, as a designated authorized user, to the arbitration agreement. Instead, this Court discounted Plaintiff's admitted status as an authorized user merely because the

---

[4]   *See* CSA § 6 ("In these AT&T Internet Service Terms, . . . 'you' refers to the Account holder, Sub-Account holder, and any Authorized User(s) . . . ."); *id.* § 1.3.2.1 ("References to 'AT&T,' 'you,' and 'us' include . . . agents, employees, and **all authorized or unauthorized users or beneficiaries of AT&T Services or products** under past, present, or future Agreements between us." (emphasis added)); Customer Agreement § 8.2(1) ("References to 'DIRECTV,' 'you,' and 'us' include . . . **all authorized or unauthorized users or beneficiaries of services** or Devices under this or prior Agreements between us." (emphasis added)); General TOS § 11(a) ("References to 'AT&T,' 'you,' and 'us' include . . . **all authorized or unauthorized users or beneficiaries of Services** under this or prior Agreements between us." (emphasis added)); Internet TOS § 13(a) (same).

parties did not provide "evidence that [Plaintiff] used his mother's account or reaped its benefits." Order at 12.[5] But the agreements do not limit "authorized users" only to those who use the services. Authorized users specifically include those who manage the named subscriber's accounts. *See* Customer Agreement § 3(d) (defining "Authorized Users" as "designated persons [who] act on your behalf in managing your account"); CSA § 1.2 (defining "Authorized Users" as "designated individuals . . . [who] act on your behalf in managing your AT&T Accounts"). By their plain terms, the agreements apply to "authorized users" **and separately** to "beneficiaries of the services." Customer Agreement § 8.2(1); *see also, e.g.*, CSA § 1.3.2.1.

Likewise, other courts have not mandated the "use" of the services before an authorized user specially covered under an agreement can be compelled to arbitrate a dispute on equitable estoppel grounds. In *Bridge v. Credit One Financial*, for example, the court compelled the non-signatory plaintiff to arbitrate claims under the Telephone Consumer Protection Act ("TCPA") based upon actions taken in managing his mother's credit card account. 2016 WL 1298712, at *3. In that case, the plaintiff called Credit One to check on his mother's account balance and payment due dates on her behalf. *Id.* at *1. As a security measure, Credit One required the plaintiff to demonstrate his authorization to access account information by providing his mother's account and partial social security number. *Id.* During this process, Credit One associated the account with the plaintiff's phone number. *Id.* Credit One subsequently called the plaintiff's phone number regarding delinquent payments on the account. *Id.* The plaintiff alleged that these calls violated the TCPA. *Id.* The plaintiff neither used the account nor stated a contractual claim based on the Credit One agreement. That did not matter. Applying equitable estoppel principles, the district court held that "by calling Credit One, inputting his mother's validation information, and gaining access to his mother's financial information," he was estopped from avoiding the arbitration

---

[5]     Such evidence has not been developed at this early stage and, in any event, is not required as set forth below.

provision in his mother's cardholder agreement in connection with calls he received from Credit One. *Id.* at \*3; *see also Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019) (applying *Bridge* and holding that the plaintiff was bound by the arbitration provision in his wife's agreement with Amazon), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

Here, Plaintiff invoked and benefited from his mother's agreements by requesting that Defendants designate him as an authorized user in order to manage her accounts. Plaintiff was specifically told that "to make the inquiries on [his] mother's behalf, [he] would need to be added as an authorized user." Pl.'s Decl. ¶ 6, Dkt. No. 29-1; *see also* Green Decl. ¶ 32, Dkt. No. 24-2. He asked his mother to take the affirmative step to add him as an authorized user under her agreements so that Defendants would speak with him directly about her accounts. Pl.'s Decl. ¶ 6. He then allegedly called Defendants as an authorized user under the agreements and as his mother's designated agent for the sole purpose of addressing her **obligations** under the agreements. Pl.'s Decl. ¶ 7. Plaintiff affirmatively invoked, exploited, relied upon, and benefited from the terms of the underlying agreements when he placed the alleged calls. Therefore, under California law, Plaintiff should be equitably estopped from disclaiming the arbitration provisions in connection with claims based on those calls. While this Court found otherwise, there is at least a "fair prospect" that the Ninth Circuit will hold that Plaintiff should be estopped from avoiding arbitration of this dispute. *Leiva-Perez*, 640 F.3d at 966; *see also Mundi*, 555 F.3d at 1046.[6]

---

[6]   This Court also discounted the several "authorized user" decisions cited by Defendants because the non-signatories might have signed agreements "at some point themselves." Order at 11. But that was not the basis of those court decisions. This Court also acknowledged that under similar facts, some other courts have compelled arbitration but rejected the "theory of equitable estoppel" adopted by those courts. *Id.* Respectfully, the "theory of equitable estoppel" in those cases cited by Defendants mirrors California law.

- 12 -

### ii.    Other Courts Have Found that a Preexisting Relationship Can Bind Non-Signatories to Arbitration Agreements.

As this Court noted in its Order, a non-signatory plaintiff may also be bound to an arbitration agreement where there is "a preexisting relationship . . . between the nonsignatory and one of the parties to the arbitration agreement [which] makes it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." Order at 10 (alteration in original) (internal quotation marks omitted) (quoting *Chan*, 2015 WL 12655701, at *5). This includes "agency and parent-child relationships." *Id.* When such a relationship exists, "[a]ppellate courts have stated that arbitration agreements are enforced with regularity against nonsignatories." *Tice*, 2020 WL 1625782, at *3 (citation omitted) (collecting cases).

Plaintiff's claims arise directly out of the affirmative steps he took to invoke the payment and customer service provisions of his mother's underlying agreements when he was managing her accounts on her behalf. He placed all of the alleged calls at issue as both his mother's agent and her son in connection with her accounts. For this independent reason, Plaintiff should also be estopped from avoiding the arbitration obligations agreed to by his mother and principal. *See, e.g.*, *Tice*, 2020 WL 1625782, at *3 (holding spousal relationship prevented plaintiff from avoiding the terms of his wife's contractual terms); *Chan*, 2015 WL 12655701, at *5 (holding non-signatory must arbitrate intentional tort claims pursuant to arbitration provision in her husband's services agreement because of their "preexisting relationship").

While this Court agreed that the existence of such a preexisting relationship might be grounds to compel arbitration against a non-signatory, it declined to compel arbitration, citing *In re Ring LLC Privacy Litigation*. Order at 10–11 (citing *In re Ring LLC Priv. Litig.*, No. 19-10899, 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021)). Respectfully, *In re Ring* is not on point. There, the defendant sought to bind "twelve minor children and one elderly woman" who were "knowingly or unknowingly

- 13 -

surveilled by a Ring device" to agreements they did not sign. 2021 WL 2621197, at *7. In that context, the district court concluded it would be "absurd and unjust" to compel those non-signatories to arbitrate absent evidence the agreement was entered into for their "necessities" or that they "knowingly exploited" the applicable terms. *Id.* at *7–8. Here, by contrast, Plaintiff: (a) is the adult son of the signatory; (b) specifically and intentionally acted as his mother's agent; and (c) actively and knowingly invoked the very agreements that contain the arbitration provision to become an authorized user so he could manage her accounts. *See* Compl. ¶¶ 14–15; Pl.'s Decl. ¶¶ 6–8, Dkt. No. 29-1.

### iii. California Courts Have Long Held that an Agent Is Bound to Arbitrate Claims Arising Out of Actions Taken in Their Agency Capacity.

Plaintiff should also be bound to arbitrate his claims because he placed all of the alleged calls at issue in his capacity as his mother's agent. "Under California law, when a nonsignatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory." *Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015); *see also* Order at 10 (noting "'non-signatories to an agreement with an arbitration clause can be compelled to arbitrate' . . . [under] agency principles" (quoting *Namisnak*, 971 F.3d at 1094)). Applying this doctrine, California courts have long recognized that agents may be bound by the principal's arbitration obligations where the claims arise from actions taken in their capacity as agents. *See Berman*, 44 Cal. App. 3d at 1004 (holding that the non-signatory plaintiff was bound by his wife's arbitration agreement where the claims arose while acting as his wife's agent); *Harris v. Super. Ct.*, 188 Cal. App. 3d 475, 479 (1986) (finding non-signatory doctor bound by hospital's arbitration obligations where claims arose from medical care doctor provided as agent for hospital). These rulings make sense. Under agency principles, the agent stands in the shoes of the principal and "is not entitled to any greater right" than the principal. *Berman*, 44 Cal. App. 3d at 1004.

- 14 -

In its Order, this Court limited the scope of the agency principle. This Court held that "while a non-signatory may invoke an arbitration agreement as an agent of a signatory party against another signatory party to the agreement, it does not follow that the reverse is true." Order at 11–12 (emphasis omitted) (citing *Simmons v. Hankey*, No. 16-6125, 2017 WL 424850, at *4 (C.D. Cal. Jan. 30, 2017)). Respectfully, Defendants have not located a case with such a holding and *Simmons* is not on point. In *Simmons*, this Court granted a non-signatory defendant's petition to compel arbitration as the agent of the signatory defendants. *Simmons*, 2017 WL 424850, at *5. *Simmons* did not address whether or in what context a signatory to an agreement containing an arbitration provision may enforce the agreement against another signatory's agent. Nor did *Simmons* address the numerous court decisions—including *Berman* and its progeny— that have held that agents can both enforce arbitration provisions and be compelled to arbitrate disputes under those provisions.

In light of California's longstanding precedent allowing signatories to compel non-signatory agents to arbitrate disputes, Defendants respectfully suggest that their appeal raises substantial legal issues on this ground.

This factor strongly weighs in favor of a stay.

## B.  Defendants Will Suffer Irreparable Harm If a Stay Is Not Granted.

Defendants will suffer irreparable harm if required to participate in further proceedings before this Court while their appeal is pending. "[T]he question on the irreparable harm stay factor is 'whether the applicant will be irreparably injured absent a stay.'" *Leiva-Perez*, 640 F.3d at 968 (citation omitted). This factor "will generally be satisfied in the special context of [a] denied motion to compel arbitration." *Steiner v. Apple Comput., Inc.*, No. 07-4486, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008) (collecting cases); *accord Murphy*, 2008 WL 8608808, at *3. As numerous courts in this Circuit have recognized, a party suffers "serious, perhaps, irreparable" harm if it "must undergo the expense and delay of a trial before being able to appeal, [as] the

- 15 -

advantages of arbitration—speed and economy—are lost forever." *Murphy*, 2008 WL 8608808, at *2 (quoting *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984)); *accord Delisle*, 2019 WL 7755931, at *4; *Echevarria*, 2019 WL 3207812, at *3; *Ali*, 2014 WL 12691084, at *1; *Zaborowski*, 2013 WL 1832638, at *2; *Pokorny*, 2008 WL 1787111, at *2; *Eberle*, 2008 WL 238450, at *3; *Winig*, 2006 WL 3201047, at *2. Absent a stay, "the right to arbitrate would be devalued, if not rendered meaningless, if litigation proceeded apace." *Cherny*, 2010 WL 2572929, at *1 (collecting cases).

If this Court declines to stay this action, Defendants will be deprived of both an arbitral forum and the streamlined arbitration procedures provided under the Consumer Rules of the American Arbitration Association, as specified in the controlling agreements. *See, e.g.*, CSA § 1.3.2.3. Instead, Defendants will incur the significant expense of litigation, including motion practice and class discovery. Courts routinely recognize that class discovery is not a mere litigation expense, but rather the sort of irreparable injury that warrants a stay. *See, e.g.*, *Delisle*, 2019 WL 7755931, at *4 (in class context, finding "Defendants' arguments regarding the burden of discovery are well taken"); *Revitch*, 2018 WL 5906077, at *1 (finding costs a "particular concern" as "Plaintiff would be entitled to conduct classwide discovery" if stay denied); *Wuest*, 2017 WL 5569819, at *1 ("The Court also notes that Plaintiff has brought this case as a class action, thus increasing the expense Defendants will incur."); *Roe*, 2015 WL 1798926, at *3 ("The burdens associated with discovery in a putative class action are substantially greater than [those] in an individual arbitration." (citation omitted)).

In addition to the burdens of class discovery, "[l]itigation presents opportunities for ancillary practice that do not exist in arbitration[,]" such as dispositive motions, briefings, hearing on a motion for class certification, and a potential trial. *Id.* "If the litigation proceeded to trial, and then the Ninth Circuit reversed this Court's order denying arbitration, then the benefits of arbitration would have been lost." *Ali*, 2014

WL 12691084, at *1. A stay, by contrast, will preserve the resources of this Court and all parties pending a determination on appeal, which may in turn result in the full dismissal of Plaintiff's claims in favor of arbitration. *See Aviles*, 2016 WL 6902458, at *4.

This factor tips decidedly in Defendants' favor.

### C.    Plaintiff Has Consented to a Stay.

Plaintiff consents to a stay of these proceedings pending this appeal. A stay will preserve the *status quo* and conserve Plaintiff's and Defendants' resources; should the Ninth Circuit affirm the Order, a stay would not deny Plaintiff his "day in court."[7]

This factor also weighs strongly in favor of Defendants.[8]

---

[7]    Defendants' Motion is unopposed and Plaintiff has consented to a stay pending appeal. Even where a request for a stay is contested, courts have held that any "possible monetary harm" Plaintiff might incur from a delay in receiving statutory damages—which are the only damages Plaintiff seeks (*see* Compl., Prayer for Relief ¶¶ 3, 4)—"can be fully redressed" should he prevail. *Murphy*, 2008 WL 8608808, at *3; *see also, e.g., Zaborowski*, 2013 WL 1832638, at *3 ("Although relief may be delayed, this case is still in its earliest stages, relief through the court system often takes a long time, and the delay may be mitigated by remedies such as prejudgment interest."); *Winig*, 2006 WL 3201047, at *2 (holding any injury to plaintiff "can be redressed by an award of damages if plaintiff ultimately prevails"); *Wuest*, 2017 WL 5569819, at *2 (The brief length of time needed to resolve an appeal does not cause substantial injury to the plaintiff or putative class.). And "the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court during [the] pendency of [an] appeal" from an order refusing to compel arbitration. *Bridge Fund Cap. Corp. v. FastBuck Franchise Corp.*, No. 08-0767, 2009 WL 1325823, at *3 (E.D. Cal. May 12, 2009); *see also Eberle*, 2008 WL 238450, at *3; *Ali*, 2014 WL 12691094, at *1 (finding general disadvantage of delay of proceedings was outweighed by potential injury to defendant).

[8]    Courts routinely stay actions pending appeal upon agreement of the parties. *See, e.g.*, Order, *Callahan v. PeopleConnect, Inc.*, No. 20-9203, Dkt. No. 88 (N.D. Cal. Dec. 20, 2021) (Chen, J.) (granting unopposed motion to stay proceedings pending appeal from order denying motion to compel arbitration); Order Granting Joint Stip. & Mot. Stay, *Ellington v. Eclipse Recreational Vehicles, Inc.*, No. 20-0800, Dkt. No. 61 (C.D. Cal. Jan. 25, 2021) (Holcomb, J.) (granting joint stipulation and motion to stay proceedings pending appeal from order denying motion to compel arbitration); Order re Stip. of Parties to Stay Action, *Wiedenbeck v. United Educ. Inst.*, No. 15-0810, Dkt. No. 35 (C.D. Cal. Jan. 14, 2016) (Carney, J.) (on parties' stipulation, staying action pending appeal from order denying motion to compel arbitration); Order Granting Unopposed Mot. Stay Pending Appeal, *Ricketts v. Nat'l Amusement, Inc.*, No. 21-0365, Dkt. No. 36 (C.D. Cal. Aug. 16, 2021) (Fischer, J.) (granting unopposed motion to stay action pending appeal); Order re: Joint Stip. to Stay All Proceeding, *Riley's Am. Heritage Farms v. MacHott*, No. 20-1739, Dkt. No. 62 (C.D. Cal. Feb. 9, 2021) (Bernal, J.) (on joint stipulation, staying proceedings pending appeal in related matter); Order Staying Case Pending Appeal, *Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, No. 20-5193, Dkt. No. 89 (C.D. Cal. Dec. 1, 2020) (Pregerson, J.) (on joint stipulation, staying action pending appeal from denial of preliminary injunction).

- 17 -

**D.      A Stay Would Be in the Public Interest.**

A stay will promote both the strong public policy favoring arbitration and the public's interest in judicial economy. The FAA establishes a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Murphy v. DIRECTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2013) (citation omitted); *see also Ali*, 2014 WL 12691084, at *2 ("Courts considering this issue 'have found that the federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay, even when other interests are at play.'" (citation omitted)). A stay will promote the FAA's policy favoring "speedy and efficient" arbitration by ensuring that Defendants do not prematurely lose their contractual right to arbitrate this dispute. *Ward*, 2014 WL 7273911, at *5 (Federal policy favoring arbitration "would be contravened by requiring the parties to litigate while the appeal is pending." (citation omitted)); *see also Delisle*, 2019 WL 7755931, at *5 ("[O]rdering a temporary stay here would best enforce" the "liberal federal policy favoring arbitration." (citation omitted)). Accordingly, courts have consistently found "that the strong public policy favoring arbitration warrants issuance of a stay pending appeal." *Murphy*, 2008 WL 8608808, at *4 (collecting cases).

A stay will also promote the public interest by ensuring the efficient allocation of judicial resources. *See Roe*, 2015 WL 1798926, at *4 ("'If this case were to proceed, the Court would be required to expend judicial resources ruling on issues which may be rendered moot after a decision' by the Ninth Circuit." (quoting *In re Apple iPhone 3G Prods. Liab. Litig.*, No. 09-2045, 2010 WL 9517400, at *2 (N.D. Cal. Dec. 9, 2010))); *Ali*, 2014 WL 12691084, at *2 (stay advances economical use of judicial resources). "It does not make sense for this Court to expend its time and energy preparing this case for trial . . . only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." *Aviles*, 2016 WL 6902458, at *4 (citation omitted); *see also*

- 18 -

*Zaborowski*, 2013 WL 1832638, at *3 ("[C]ontrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration."). This concern is of heightened importance when class claims are involved. *See Gray v. Golden Gate Nat'l Recreational Area*, No. 08-0722, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) ("[I]ssuance of a stay would avoid wasting resources on a class action litigation which might be changed in scope on appeal.").

Respectfully, this Court should follow the numerous other courts within this Circuit that have issued stays pending appeal in similar circumstances.

### CONCLUSION

For the foregoing reasons, and upon Plaintiff's consent, this Court should stay this action pending appeal.

Dated: January 14, 2022

Respectfully submitted,

By: */s/ Michael W. McTigue Jr.*
    Michael W. McTigue Jr. (*pro hac vice*)
    Meredith C. Slawe (*pro hac vice*)
    Frank Gooch III (SBN 70996)

    *Attorneys for Defendants AT&T Corp.*
    *and DIRECTV, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on January 14, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5-3.2.

*/s/ Michael W. McTigue Jr.*
Michael W. McTigue Jr.